**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington corporation, <br><br> Plaintiff, <br><br> v. <br><br> COMMUNITY HEALTH SYSTEMS, INC., a Delaware corporation, <br><br> Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No: |

## COMPLAINT

Plaintiff, Microsoft Corporation ("Microsoft"), hereby alleges for its complaint against Defendant Community Health Systems, Inc. ("CHS") as follows:

### Nature of Action

1.      This action arises from CHS's willful copyright infringement and willful breach of its contractual obligations and implied covenant of good faith and fair dealing.

2.      Microsoft develops, manufactures, and supports a wide range of computer and internet-related software products and services. Since its founding in 1975, Microsoft has invested untold amounts of labor and financial resources in its software development and licensing efforts.

3.      On information and belief, CHS is a publicly-traded company employing over 100,000 employees. On information and belief, with its subsidiaries, CHS owns, leases, and operates hospitals and provides related services.

4.     Microsoft's Volume Licensing program was created for companies which have 500 employees or more, like CHS, and need to use a number of different Microsoft products. It allows them to economically license a significant number of Microsoft products.

5.     Over the past seventeen years, Microsoft and CHS entered into a number of license agreements for various software products through Microsoft's Volume Licensing Program.

6.     The terms in the Microsoft Business and Services Agreement, the overarching agreement in the Volume Licensing Program, give Microsoft the contractual right to have an independent auditor verify that CHS is complying with the agreements it entered into with Microsoft. This independent verification process helps IT managers understand their software inventory better, and it can streamline operations for greater efficiency within an organization.

7.     This independent verification process is also critical to protecting Microsoft's intellectual property, maintaining the integrity of the Volume Licensing Program, and ensuring CHS complies with its contractual obligations.

8.     On information and belief, on or about 2016, CHS began divesting entities that were previously CHS subsidiaries or affiliates.

9.     On information and belief, despite having no right to do so, CHS intentionally facilitated the continued use of Microsoft software by these divested entities.

10.     In October 2016, Microsoft notified CHS that it was exercising its contractual rights to verify licensing and contract compliance.

11.     Over 16 months later, and notwithstanding repeated requests from the independent auditor and Microsoft, on information and belief, CHS has produced only a small fraction of the data required for the independent verification process. As set forth below, CHS

2

has been largely not responsive to, if not obstructionist of, Microsoft's contractual right to an independent verification. CHS has been given every opportunity to comply with the independent verification process, and Microsoft has exhausted its best efforts to resolve this matter without judicial intervention. CHS's pattern of conduct, including missing numerous mutually agreed upon deadlines and providing incomplete data, demonstrates its unwillingness to comply with its contractual obligation and/or with the independent verification process.

12.     Meanwhile, on information and belief, CHS has been willfully infringing Microsoft's copyrights through direct or indirect extensive, unlicensed use of Microsoft's software.

## The Parties

13.     Microsoft Corporation is a corporation organized and existing under the laws of the state of Washington, with its principal place of business in Redmond, Washington. "Microsoft" as used in this Complaint refers collectively to Plaintiff Microsoft Corporation and its affiliates and subsidiaries, including Microsoft Licensing, GP.

14.     On information and belief, Community Health Systems, Inc. is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in Franklin, Tennessee.

## Jurisdiction and Venue

15.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a). This action involves claims brought under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*

16.     This Court has jurisdiction over Microsoft's state law claims pursuant to 28 U.S.C. § 1367, as well as under the general principles of supplemental and pendent jurisdiction.

3

17.     This Court also has subject-matter jurisdiction over Microsoft's state law claims pursuant to 28 U.S.C. § 1332, because there exists complete diversity of citizenship between the parties, and the amount in controversy is significantly in excess of $75,000, satisfying the jurisdiction minimum of this Court.

18.     This Court has personal jurisdiction over CHS because, on information and belief, CHS's principal place of business is in Franklin, Tennessee.

19.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) because, on information and belief, CHS resides in this judicial district. Venue is also proper by contractual agreement between the parties.

## Facts Entitling Microsoft to Relief

**A.      Microsoft's Software Copyrights**

20.     Among hundreds of others, Microsoft holds valid and exclusive copyrights to the software products identified below (the "Copyrights"):

| Software Product Title | Copyright Registration No. | Copyright Registration Date |
|---|---|---|
| Microsoft SQL Server 2000 Enterprise Edition | TX 5-195-890 | November 1, 2000 |
| Microsoft SQL Server 2005, Enterprise Edition | TX 6-486-660 | December 12, 2006 |
| Microsoft SQL Server 2008 Enterprise | TX 6-881-816 | October 17, 2008 |
| SQL Server 2012 Enterprise | TX 7-550-556 | June 7, 2012 |
| SQL Server 2014 Enterprise | TX 7-976-865 | October 21, 2014 |
| SQL Server 2016 Enterprise Edition | TX 8-289-213 | June 30, 2016 |
| Microsoft Windows Server 2003 Enterprise Edition | TX 5-811-026 | October 2, 2003 |
| Windows Server 2008 Enterprise | TX 6-880-740 | March 18, 2008 |
| Windows Small Business Server 2011 Essentials | TX 7-526-478 | April 2, 2012 |
| Windows Small Business Server 2011 Standard | TX 7-526-450 | April 2, 2012 |

4

| | | |
|---|---|---|
| Windows Server 2012 | TX 7-622-123 | October 2, 2012 |
| Windows Server 2016 Datacenter | TX 8-420-034 | December 15, 2016 |
| Microsoft Office Professional Edition 2003 | TX 5-837-617 | December 9, 2003 |
| Microsoft Office Ultimate 2007 | TX 6-504-552 | February 26, 2007 |
| Microsoft Office Professional 2010 | TX 7-219-968 | June 17, 2010 |
| Microsoft Office Professional Plus 2010 | TX 7-151-840 | May 28, 2010 |
| Office Professional 2013 | TX 7-649-882 | March 13, 2013 |
| Office 365 ProPlus 2016 | TX 8-097-602 | October 7, 2015 |
| Microsoft Office 2004 for Mac | TX 6-875-772 | November 8, 2007 |
| Microsoft Office Mac 2008 with Expression Media | TX 7-080-253 | February 18, 2008 |
| Microsoft Office for Mac Home and Business 2011 | TX 7-357-683 | December 9, 2010 |
| Microsoft Office for Mac Standard 2011 | TX 7-370-339 | December 2, 2010 |
| Microsoft Office for Mac Home & Business 2016 | TX 8-100-294 | October 9, 2015 |

21.     Under the license agreements described below, CHS and/or at least one of its current or former affiliates gained access to, began using, and/or continues to use one or more of the software products listed above.

22.     On information and belief, CHS and/or at least one of its current or former affiliates is using one or more of the software products identified above.

23.     On information and belief, CHS and/or at least one of its current or former affiliates continues to use one or more of the software products listed above without sufficient payment to Microsoft for the right to do so.

**B.     The License Agreements**

24.     The Microsoft Business and Services Agreement creates the general rights, obligations, and restrictions on the parties for the Volume Licensing Program.

5

25.     The parties' arrangement was governed by the terms of the following agreements entered into and between Microsoft and CHS: Microsoft Business Agreement no. U955184 (effective December 13, 2000); Amendment to Microsoft Business Agreement no. U955184 (effective January 13, 2012); Select Plus Agreement (effective May 30, 2012); the associated Program Signature Form. The Microsoft Business Agreement was superseded by the following agreements entered into and between Microsoft and CHS (collectively, the "License Agreements"): Microsoft Business & Services Agreement no. U0663250 (effective June 1, 2013) (the "MBSA"); Enterprise Agreement (effective June 1, 2013); Transaction Tax Terms & Conditions (effective June 1, 2013); Enterprise Enrollments (effective June 1, 2013); Enterprise Enrollment Amendment (effective June 1, 2013); Customer Price Sheet (effective June 1, 2013); and the associated Program Signature Form. True and correct copies of the agreements referenced herein are attached as Exhibits 1–12. The parties' relationship is currently governed by the MBSA. The MBSA remains in force until terminated.

26.     On August 17, 2014, Microsoft Licensing, GP assigned the License Agreements to Microsoft Corporation.

27.     The License Agreements bind the "Customer," i.e., CHS, and its affiliates, where affiliates is defined to be any legal entity that a party owns, that owns a party, or that is under its common ownership, and where "ownership" means control of more than a 50% interest in an entity.

28.     The MBSA contains a number of restrictions on CHS's and its affiliates' use of the licensed products, including that CHS must not distribute, sublicense, rent, lease, lend, or host any Microsoft software.

6

29.     Under the MBSA, the prohibition against hosting Microsoft software means CHS cannot host Microsoft software on its servers for use by entities not covered by the License Agreements.

30.     Also under the MBSA, any rights not expressly granted to CHS are reserved to Microsoft.

31.     The MBSA also contains other rights, obligations, and restrictions, including:

    a.  **Confidentiality.** Under the confidentiality provision, the parties agreed to not disclose each other's confidential information to third parties and to not use or disclose each other's confidential information except for the purposes of the parties' business relationship with each other, and to take reasonable steps to protect each other's confidential information.

    b.  **Restrictions on venue.** The parties agreed that if Microsoft needs to bring an action to enforce any agreement, it will do so where CHS is headquartered.

32.     The License Agreements may not be transferred unless Microsoft consents. If CHS wishes to transfer a license, it must submit a form that includes signatures of both CHS and the entity to which CHS wishes to transfer the license, the date of the transfer, and an itemized list of software products that are being transferred. Without this, Microsoft cannot process the transfer request. The transfer is not valid until the form is countersigned by Microsoft.

C.      **The Independent Verification Process**

33.     Under the MBSA, Microsoft has "the right to verify compliance with the license terms" through an independent auditor.

34.     CHS must "promptly provide the independent auditor with information it reasonably requests in furtherance of the verification, including access to systems running the

7

Products and evidence of licenses for Products [CHS] hosts, sublicenses, or distributes to third parties."

35.     By the terms of the MBSA, the independent auditor expressly is subject to a confidentiality obligation.

36.     By the terms of the MBSA, if the independent auditor's independent verification reveals any unlicensed use by CHS, then by the terms of the MBSA CHS must order sufficient licenses to cover its use within 30 days.

37.     By the terms of the MBSA, if this independent verification process reveals 5% or more of CHS's use is unlicensed, CHS must reimburse Microsoft for the costs of the independent verification process and purchase the required licenses at 125% of the price for each product.

38.     The standard independent verification process involves the collection of data from Microsoft's customer, followed by analyzation and validation of the data by the independent auditor with the customer to ensure that the collected data is accurate and complete. The independent auditor then uses the data collected to prepare a report, which it, the customer, and Microsoft use to determine the customer's compliance with the License Agreements and what, if any, licenses need to be purchased.

39.     On average, it takes a Microsoft customer approximately four to six weeks to collect the data required for the independent verification process.

**D.     CHS's Divested Entities**

40.     On information and belief, in response to financial struggles, CHS was divesting hospitals, units, and/or other entities in or around 2015.

41.     On information and belief, CHS divested entities in 2016.

42.     On information and belief, CHS divested entities in 2017.

43. On information and belief, at least some of CHS' divestments have become independent legal entities (individually, a "Divested Entity, and collectively, the "Divested Entities").

44. Because the Divested Entities are no longer affiliates of CHS but independent legal entities, the Divested Entities have no rights under the License Agreements agreed to by CHS and Microsoft, including any rights to use Microsoft's software products. Instead, to legally use Microsoft's software products, each Divested Entity must separately contract with Microsoft for the rights to do so, or CHS must contract with Microsoft under the appropriate agreements so that it can provide hosting services to a Divested Entity.

**E.      Microsoft's Exercise of its Verification Rights**

45. On October 13, 2016, Microsoft notified CHS that it was exercising its right to conduct a formal license verification compliance review of CHS's use of Microsoft products and services.

46. Microsoft retained Deloitte & Touche LLP ("Deloitte") as the independent auditor to conduct this independent verification process.

47. The data to be provided by CHS and follow-up data to be collected on-site by Deloitte is essential to determining whether CHS's activities comply with the License Agreements and whether CHS is violating any of Microsoft's valuable intellectual property rights.

**F.      CHS's Breach of its Verification Obligations**

48. On October 18, 2016, Deloitte contacted CHS to schedule the initial meeting to discuss the independent verification process.

9

49.     On November 10, 2016, however, the Chief Information Officer for CHS formally requested to postpone the independent verification process until 2017.

50.     That same day, Microsoft agreed to accommodate CHS's request to postpone the initial meeting for the independent verification process until to January 9, 2017.

51.     On November 14, 2016, the Chief Information Officer for CHS agreed to the timetable as provided by Microsoft below:

| Task by Review Phase | Owner | Original Target Date | Revised Target Date |
|---|---|---|---|
| Kick Off Meeting | | 11/11 | 01/09 |
| Initial Data Due | | 12/02 | 01/30 |
| Perform pre-onsite work & receive follow-up data collection | | 12/16 | 02/13 |
| On-Site Fieldwork | | 1/03 | 02/27 |
| Draft ELP Report | | 01/17 | 03/13 |
| Final ELP Report | | 01/24 | 03/20 |
| 3-Way License Position Review | | 01/26 | 03/22 |
| True-up/Compliance Order Placed with Reseller (if compliance gaps are found) | | --- | 4/22 |

52.     On January 9, 2017, the initial call was held.

53.     CHS was informed the scope of the independent verification process would be CHS's *full enterprise*, i.e., *all* Microsoft assets in use. CHS and Deloitte discussed CHS's environment (such as users and devices) from which data would be collected to ensure the independent verification process covered CHS's full enterprise.

54.     CHS claimed to disclose to Deloitte its complete enterprise environment in which Microsoft software products were in use.

55.     On January 30, 2017, CHS did not provide any data, despite its prior agreement to do so.

56.     This began a pattern of CHS ignoring, obstructing, and/or refusing to comply with the independent verification process, including deadlines to which it agreed.

57.    For example, after missing a weekly status call, CHS missed its February 10, 2017, deadline to provide a corporate family tree to Deloitte. Deloitte made inquiry of CHS about CHS's missed deadline, but CHS failed to respond that day.

58.    Deloitte followed up again on February 13, 2017, to which CHS responded that it was still reviewing the corporate structure. The notion that CHS could not or would not provide its own corporate structure was never explained by CHS.

59.    On February 21, 2017, CHS changed its position. CHS refused to provide its corporate family tree or any data at all until a non-disclosure agreement was executed with Deloitte, despite the fact that the MBSA already explicitly required Deloitte to be subject to a confidentiality obligation.

60.    In order to move forward, Deloitte agreed to enter into an additional non-disclosure agreement ("NDA") with CHS. Deloitte, however, emphasized that CHS needed to be collecting data in the meantime and produce it within 24 hours of the parties' execution of the NDA.

61.    Thereafter, CHS or its agents failed to respond to multiple communications from Deloitte in which Deloitte was attempting to finalize the NDA, including Deloitte's communications of March 20, April 5, and April 21, 2017.

62.    CHS also repeatedly tried to include provisions in the NDA that would limit or restrict both the independent verification process *and* the release of the information to Microsoft, rather than simply address the treatment of confidential information.

63.    Restricting the release of information to Microsoft would defeat the purpose of the independent verification process, as it would prevent Microsoft from being able to fully verify CHS's licensing and contract compliance.

11

64.     Because of CHS's conduct, the non-disclosure agreement was not executed until September 2017—almost seven months after CHS refused to move forward with the independent verification process without one.

65.     Deloitte set a new deadline of September 29, 2017, for CHS to provide the data that was initially requested by Deloitte in the beginning of 2017.

66.     CHS did not provide Deloitte any data on September 29, 2017.

67.     CHS then agreed to provide the initial data by October 4, 2017.

68.     CHS did not provide any data to Deloitte on October 4, 2017.

69.     On November 9, 2017, CHS submitted only partial data for about one-sixth of its enterprise.

70.     Deloitte tried to reach CHS by telephone or email in an attempt to obtain complete data from CHS, including on October 5, October 9, and November 13, 2017. CHS did not respond.

71.     On November 17, 2017, CHS finally responded, stating it had failed to meet deadlines because of ostensible technical issues with uploading the requested data to Deloitte.

72.     Deloitte investigated the purported technical issue that same day, and it quickly determined that any problem was due to user misunderstanding. Deloitte promptly informed CHS and worked with CHS to resolve the issue.

73.     On November 22, 2017, CHS finally uploaded data. But it turned out to be the same incomplete data that CHS had previously submitted earlier that month.

74.     That same day, Deloitte requested for CHS to provide all requested data to be disclosed by CHS by end of day. CHS never provided the requested data.

75. Despite Deloitte's numerous follow-up communications between November 23 through December 12, 2017, CHS missed additional disclosure deadlines and did not submit any additional data.

76. Given CHS's continued failure to provide the data requested by Deloitte for the independent verification process for almost one year, Microsoft engaged outside counsel to send a letter demanding CHS comply with its obligations to submit data by December 22, 2017.

77. On December 15, 2017, CHS finally provided some limited additional data. The full data needed to move forward to the next stages of the independent verification process remained incomplete.

78. Nevertheless, from the limited information provided by CHS, Deloitte discovered the actual scope of CHS's full enterprise was over *500% larger* than what CHS had disclosed in January.

79. Given the vast amount of data CHS still needed to provide, Deloitte gave CHS yet another extension, to January 19, 2018, for CHS to submit all required data.

80. On January 19, 2018, CHS produced some limited additional data. But significant data was still missing.

81. On information and belief, to date, CHS has still provided only a small fraction of the data necessary for the independent verification process.

82. CHS's conduct to date demonstrates it is: (i) infringing Microsoft's Copyrights; (ii) trying to conceal such infringement; (iii) knows about and is contributing to others' infringement of Microsoft's rights; (iv) acting in bad faith; and (v) has no intention of complying with its contractual obligations.

13

83. On information and belief, CHS is extensively and intentionally using Microsoft's software without permission.

84. On information and belief, while CHS was delaying the independent verification process, it was continuing to divest other additional entities originally in its corporate family.

85. On information and belief, CHS is hosting Microsoft's software and permitting its Divested Entities to use the software without Microsoft's authorization.

86. On information and belief, the Divested Entities are using copyrighted Microsoft software products hosted on CHS's servers without authorization and/or contractual agreements to do so from Microsoft.

## Count I
### (Copyright Infringement)

87. Microsoft adopts and incorporates by reference paragraphs 1–86 as if fully restated herein.

88. Microsoft's Copyrights are unique and valuable property.

89. The software protected by Microsoft's Copyrights constitute original works and copyrightable subject matter pursuant to the Copyright Act, and they have been duly registered by Plaintiffs with the United States Copyright Office and published by Microsoft in conformity with the Copyright Act and all laws governing copyrights.

90. Microsoft has been and is the owner of all rights, title, and interest in and to the Copyrights. Such rights have never been assigned to CHS, nor have they been dedicated to the public. Microsoft has all rights necessary to sue to enforce its Copyrights.

91. Registrations for the Copyrights were issued before CHS's infringement of Microsoft's Copyrights began.

14

92.     On information and belief, beginning on an unknown date and continuing to the present, CHS has infringed the Copyrights by using the Microsoft software products covered by those Copyrights without approval or authorization from Microsoft.

93.     On information and belief, beginning on an unknown date and continuing to the present, CHS has infringed the Copyrights by using the Microsoft software covered by those Copyrights without due compensation owed to Microsoft and without authorization from Microsoft for such use.

94.     On information and belief, beginning on an unknown date and continuing to the present, CHS has infringed the Copyrights by hosting the Microsoft software covered by those Copyrights for others to use without approval or authorization from Microsoft.

95.     On information and belief, beginning on an unknown date and continuing to the present, CHS has infringed the Copyrights by hosting the Microsoft software covered by those Copyrights for others to use without due compensation owed to Microsoft and without authorization from Microsoft for such use.

96.     As a direct and proximate result of the activities complained of herein, CHS is liable to Microsoft for copyright infringement under 17 U.S.C. § 501.

97.     CHS's activities and the resulting damage to Microsoft is continuing.

98.     CHS has concealed, and is continuing to conceal, the full scope of its copyright infringement by refusing to allow a contractually-required verification of its licensing compliance under the MBSA.

99.     CHS's conduct, as set forth herein, was and continues to be deliberate, intentional, malicious, and willful within the meaning of the Copyright Act.

15

100.     As a direct and proximate result of the activities complained of herein, Microsoft has suffered and will continue to suffer damages in an amount to be proven at trial. Pursuant to 17 U.S.C. § 504(b), Microsoft is entitled to recover its actual damages. In the alternative, Microsoft is entitled to enhanced statutory damages pursuant to 17 U.S.C. § 504.

101.     Further, CHS's conduct, as set forth herein, has caused and will continue to cause irreparable damage to Microsoft, for which Microsoft has no adequate remedy at law. Unless CHS is restrained by this Court from continuing its contributory infringement of Microsoft's Copyrights, these injuries will continue to occur in the future. Microsoft is thus entitled to injunctive relief restraining CHS from further infringement pursuant to 17 U.S.C. § 502.

102.     Pursuant to 17 U.S.C. § 505, Microsoft is also entitled to recover its reasonable attorneys' fees and costs of suit.

## Count II
### (Contributory Copyright Infringement)

103.     Microsoft adopts and incorporates by reference paragraphs 1–102 as if fully restated herein.

104.     CHS knowingly hosted copyrighted Microsoft software products on its servers, including those identified in paragraph 20.

105.     On information and belief, CHS knows or has reason to know that the Divested Entities did not enter into license agreements with Microsoft permitting the use of copyrighted Microsoft software products hosted on CHS's servers, including those listed in paragraph 20.

106.     On information and belief, CHS knowingly and intentionally permitted the Divested Entities to access and use the copyrighted Microsoft software products hosted on its servers, which CHS knew would damage, violate, and infringe Microsoft's Copyrights.

16

107. On information and belief, CHS knows or has reason to know of the Divested Entities' infringing use of copyrighted Microsoft software products hosted on CHS's servers, including those listed in paragraph 20, directed and controlled the infringing activities alleged in this Complaint, and benefitted economically from the infringement of Microsoft's Copyrights.

108. By engaging in the illegal conduct alleged herein, CHS has induced, caused, and materially contributed to infringing conduct of the Copyrights by the Divested Entities.

109. CHS substantially participated in, and deliberately orchestrated, such infringing activities to Microsoft's detriment.

110. CHS's conduct, as set forth herein, was and continues to be deliberate, intentional, malicious, and willful within the meaning of the Copyright Act.

111. Due to CHS's conduct, as set forth herein, CHS is jointly and severally liable for contributory infringement of Microsoft's Copyrights.

112. CHS's conduct, as set forth herein, has caused and will continue to cause irreparable damage to Microsoft, for which Microsoft has no adequate remedy at law. Unless CHS is restrained by this Court from continuing its contributory infringement of Microsoft's Copyrights, these injuries will continue to occur in the future. Microsoft is thus entitled to injunctive relief restraining CHS from further infringement pursuant to 17 U.S.C. § 502.

## Count III
### (Breach of Contract – Specific Performance)

113. Microsoft adopts and incorporates by reference paragraphs 1–112 as if fully restated herein.

114. Microsoft Licensing, GP and CHS entered into the MBSA and License Agreements.

17

115.    On August 17, 2014, Microsoft Licensing, GP assigned the License Agreements to Microsoft Corporation.

116.    The MBSA is a valid and binding contract supported by considerations.

117.    Microsoft has performed all of its duties and obligations under MBSA.

118.    Under the terms of the MBSA, CHS agreed Microsoft had the right to verify compliance with the licenses through an independent auditor. Microsoft would not have licensed its software to CHS without this right to independent verification.

119.    On October 13, 2016, Microsoft invoked its right to the independent verification process.

120.    CHS breached the MBSA by obstructing and not complying with the independent verification process.

121.    On information and belief, CHS intentionally disclosed only a small portion of its full enterprise to Deloitte at the outset of the independent verification process.

122.    As described in greater detail above, CHS demanded a non-disclosure agreement despite that the MBSA explicitly stated Deloitte would be subject to a confidentiality obligation.

123.    Then, CHS unnecessarily extended the negotiation of the non-disclosure agreement by failing to respond to communications and by repeatedly trying to improperly expand the scope of the non-disclosure agreement to matters beyond the treatment or protection of confidential information.

124.    After seven months, the non-disclosure agreement was executed, but CHS did not provide any data for over one month. The data it finally provided was incomplete, and only from a subset of CHS's full enterprise.

18

125.    After multiple follow-up communications and correspondence from Microsoft's outside counsel, CHS provided some limited additional data to Deloitte.

126.    While still incomplete, the data produced to date revealed CHS failed to disclose its full enterprise.

127.    Despite Deloitte's repeated efforts, CHS has still not provided the complete data set originally requested by Deloitte over one year ago.

128.    CHS breached the MBSA by failing to provide any data for most of its enterprise after Microsoft invoked its verification right over 16 months ago.

129.    CHS's breach of the MBSA and obstruction of the independent verification process was willful.

130.    On information and belief, CHS intentionally disclosed to Deloitte less than its full enterprise to conceal the extent to which Divested Entities have been using Microsoft software hosted on CHS servers in violation of the MBSA.

131.    Further, on information and belief, CHS is intentionally delaying the independent verification process to conceal the number of Divested Entities continuing to use Microsoft software hosted on CHS servers in violation of the MBSA.

132.    Microsoft has no adequate remedy at law because CHS has prevented, and is continuing to prevent, a complete investigation into the full scope of CHS's license non-compliance, stopping Microsoft from determining the full extent of its damages. Therefore, Microsoft requires specific performance of CHS's obligation to fully comply with the independent verification to stop CHS's continued breach of the MBSA. Microsoft also requires specific performance of CHS's obligation to fully comply with the independent verification to determine the full extent of CHS's license non-compliance and copyright infringement.

19

## Count III
### (Breach of Contract – Damages)

133.    Microsoft adopts and incorporates by reference paragraphs 1–132 as if fully restated herein.

134.    Microsoft and CHS entered into the MBSA. The MBSA is a valid and binding contract supported by considerations.

135.    Microsoft has performed all of its duties and obligations under the MBSA.

136.    On information and belief, CHS breached the MBSA by intentionally failing to compensate Microsoft for all copies of Microsoft software products it or any of its affiliates has used during the term of the MBSA.

137.    Additionally, the MBSA restricts CHS from hosting Microsoft software.

138.    On information and belief, in violation of this restriction, CHS is knowingly and willfully hosting Microsoft software for use by its Divested Entities.

139.    Microsoft has been injured by CHS's breaches and is entitled to damages in an amount to be provided at trial, including without limitation, costs Microsoft incurred from the independent verification process and purchases of the appropriate licenses.

140.    While Microsoft cannot estimate the full extent of its harm from CHS's breaches because of CHS's breach of its obligation to submit to verification by an independent auditor, Microsoft has suffered harm in an amount more than $75,000 from CHS's intentional breaches of the MBSA.

## Count IV
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

141.    Microsoft adopts and incorporates by reference paragraphs 1–140 as if fully restated herein.

142. The License Agreements contain implied covenants of good faith and fair dealing providing that neither party would act to deprive the other of the benefits of the agreements between them.

143. CHS's conduct represents a breach of the implied covenants of good faith and fair dealing between Microsoft and CHS, including without limitation, by unreasonably delaying the contractually required independent verification, advancing pretextual reasons for not allowing the contractually required independent verification, and failing to cooperate with Microsoft's attempts to obtain the full benefits of the contractually required independent verification.

144. As a direct and proximate result of such breach and CHS's wrongful conduct, Microsoft has been damaged in an amount to be determined at trial.

## Prayer for Relief

WHEREFORE, Microsoft requests that judgment be granted in its favor and against CHS and that this Court award it the following relief:

1. An order permanently enjoining CHS, and all those in active concert or participation with CHS, from infringing Microsoft's Copyrights pursuant to 17 U.S.C. § 502, including without limitation, permanently enjoining CHS from continued use of copyrighted Microsoft software without providing due compensation to Microsoft and from continued hosting of copyrighted Microsoft software for access and use by the Divested Entities;

2. Damages in an amount to be proven at trial sufficient to compensate Microsoft for all damages caused by CHS's copyright infringement pursuant to 17 U.S.C. § 504(b), or if elected prior to final judgment, statutory damages pursuant to 17 U.S.C. § 504(c);

3. A finding that CHS willfully infringed Microsoft's Copyrights, entitling Microsoft to enhanced statutory damages pursuant to 17 U.S.C. § 504(c);

4. An order requiring specific performance of CHS's verification obligations under the MBSA, including ordering CHS to promptly provide an independent auditor with the data necessary to measure CHS's software usage and licensing of Microsoft's products and to allow an independent auditor to conduct an on-site inspection to test and verify this data as necessary to complete the verification;

5. Compensatory damages in an amount to be proven at trial arising from CHS's breach of contract and breach of the implied covenant of good faith and fair dealing, including but not limited to contractual remedies specified in the License Agreements upon a finding of unlicensed use;

6. All allowable costs associated with this action, pursuant to 17 U.S.C. § 505;

7. Microsoft's reasonable attorneys' fees, pursuant to 17 U.S.C. § 505;

8. Pre-judgment interest on the amount of any award to Microsoft; and

9. Any and all additional relief that this Court deems just and proper.

Dated:  March 15, 2018                    Respectfully submitted,


                                          /s Will Parsons_____
                                          Jay S. Bowen, TN BPR No. 2649
                                          Will Parsons, TN BPR No. 26519
                                          SHACKELFORD BOWEN MCKINLEY & NORTON, LLP
                                          47 Music Square East
                                          Nashville, TN 37203
                                          Tel:  (615) 329-4440
                                          Fax: (615) 329-4485
                                          jbowen@shackelfordlaw.net
                                          wparsons@shackelfordlaw.net

                                          Floyd A. Mandell (*pro hac vice to be filed*)
                                          Julia L. Mazur (*pro hac vice to be filed*)
                                          KATTEN MUCHIN ROSENMAN LLP
                                          525 West Monroe Street
                                          Chicago, IL  60661
                                          Telephone:  (312) 902-5200
                                          Fax:  (312) 902-1061
                                          floyd.mandell@kattenlaw.com
                                          julia.mazur@kattenlaw.com

                                          *Attorneys for Microsoft Corporation*